On Motion fob Rehearing

STEVENSON, J.
We grant appellants’ motion for rehearing, withdraw our previous opinion issued on April 13, 2011, and substitute the instant decision in its place.
Appellants challenge the dismissal of their complaint for declaratory relief filed against appellees, the City of Pompano Beach and PPI, Inc., to declare a revised plat approval inconsistent with the City’s comprehensive plan. Under section 163.3215(3), Florida Statutes (2009), an aggrieved or adversely affected party may maintain an action for declaratory or in-junctive relief against a local government to challenge a “development order” that is inconsistent with the comprehensive plan. The trial court granted the appellees’ motion to dismiss and concluded that the City’s plat approval was not subject to challenge under section 163.3215(3) because it was not a “development order.” Upon further review and consideration of the development rights consequent to a plat approval under the City Land Development Code, we find that the plat approval in the instant case is a “development *597 order” under the statutory scheme and reverse.
The facts are briefly summarized and taken from the complaint. Appellants are all citizens living near or around Pompano Park Racino. The Resolution approving the plat was a revision to a prior, 2008 plat approval of the Park. The 2008 plat divided the Park into two parcels, A and B. This appeal concerns only parcel A since, according to the complaint, parcel B was ultimately not included in the plat application or approval. The Park, as approved in the 2008 plat, consisted of “an existing 278,381 square foot, 5,256 seat racetrack and grandstand facility known as the Pompano Park Harness Track — a parimutuel wagering facility.” In connection with the racetrack, Parcel A contained 550 horse stalls, 44 dormitory rooms for jockeys, 115,906 square feet of ancillary commercial/retail use and a 46,503-square-foot gambling casino.
Subsequently, the City passed Resolution 2009-120, at issue in this case, which made several changes to the 2008 plat. The Resolution authorized the continued use of the existing racetrack and casino, authorized an expansion and conversion of land uses, and increased the development thresholds of the Park. Specifically, development thresholds were increased to allow 850 horse stalls, 154 dormitory rooms, a 500-room hotel, and a 230,000-square-foot casino building (containing a 55,000-square-foot casino and 175,000 square feet of commercial uses). In total, this approved an 8,497-square-foot expansion for casino use, a 54,094-square-foot expansion of commercial uses, and a new hotel. The Resolution also provided a preliminary approval for compliance with the City’s land development code regarding traffic standards, as well as adequacy of water management, solid waste disposal and recreation facilities.
According to the complaint, the plat approval is inconsistent with the City’s plan because it is a “juxtaposition of intensive commercial and recreational uses over the existing land use on the property, which is designed for less-intensive recreational uses.” The comprehensive plan allegedly “identifies a primary land use for the property consisting of less-intensive recreational uses, and permits some more intense commercial uses to exist to support this primary use.” Appellants maintain that the approval of the revised plat will allow intense commercial uses, rather than recreational uses, to become the dominant use on the property. Further, appellants maintained that the plat approval is inconsistent with the City’s comprehensive plan because it violates various traffic policies and public-facility standards, and threatens surrounding properties and infrastructures. Appellants alleged in their complaint that the plat approval was a development order under section 163.3215 and had to comply with the City’s comprehensive plan. The City and PPI filed a motion to dismiss and maintained that a plat approval was not the equivalent of a development order. The trial court agreed with the City and PPI, and granted the motion to dismiss.
In reviewing dismissal of a complaint seeking relief under section 163.3215, the standard of review is de novo. See Lutz Lake Fern Rd. Neighborhood Grps., Inc. v. Hillsborough Cnty., 779 So.2d 380, 383 (Fla. 2d DCA 2000). All well-pleaded facts and reasonable inferences therefrom must be accepted as true. See Wells v. Wells, 24 So.3d 579, 582 (Fla. 4th DCA 2009). The test is not whether the complaint shows that the plaintiff is likely to succeed in getting a declaration of rights, but whether the plaintiff is entitled *598 to a declaration of rights at all. See id. at 583.
Pursuant to Florida Statutes Chapter 163 governing comprehensive plans, any “development order” issued by a local government must be consistent with that local government’s comprehensive land use plan. § 163.3194(l)(a), Fla. Stat. (2009). The Act is to be “construed broadly to accomplish its stated purposes and objectives .” § 163.3194(4)(b). A development order is defined as “any order granting, denying, or granting with conditions an application for a development permit.” § 163.3164(7), Fla. Stat. (2009). A development permit “includes any building permit, zoning permit, subdivision approval, rezoning, certification, special exception, variance, or any other official action of local government having the effect of permitting the development of land.” § 163.3164(8) (emphasis added). Pursuant to section 163.3164(6), “development” has the meaning given it in section 380.04 of “The Florida Environmental Land and Water Management Act of 1972,” and is defined there as “the carrying out of any building activity ... [or] the making of any material change in the use or appearance of any structure or land.” § 380.04(1), Fla. Stat. (2009). The meaning of “development” in section 380.04(1) is more specifically defined in section 380.04(2)(b) as a “change in the intensity of use of land, such as an increase in the number of dwelling units in a structure or on land or a material increase in the number of businesses, manufacturing establishments, offices, or dwelling units in a structure or on land.” Further, section 380.04(4) provides that “[rjeference to particular operations is not intended to limit the generality of subsection (1).”
The City of Pompano Beach land development code adopts the statutory definition for “development order,” but more specifically defines a “development permit” as “[a]ny building permit, zoning permit, plat approval, site plan approval or rezoning, certification, variance, or other action having the effect of permitting development.” Pompano Beach, Fla., Code Ordinances § 157.01 (emphasis added). A “plat” is defined as:
A map or delineated representation of the subdivision of lands, being a complete exact representation of the subdivision and other information in compliance with the requirement of all applicable sections of this chapter and of any local ordinances....
Pompano Beach, Fla., Code Ordinances § 157.01 (2009).
While the City code cannot expand the statutory definition of development permit, we believe that its specific designation of a plat approval as a development permit is consistent with the plain language of section 163.3164(8) and with the liberal interpretation Chapter 163 must be given. Indeed, the list of development permits contained in section 163.3164(8) was not meant to be exhaustive as it was followed with the language “or any other official action ... having the effect of permitting the development of land.” Since the City’s plat approval “ha[s] the effect of permitting development,” see Pompano Beach, Fla., Code Ordinances § 157.01, it falls squarely within the Florida Statutes definition of a “development permit.” See § 163.3164(8), Fla. Stat. (development permit includes any official action of local government “having the effect of permitting the development of land”).
As pointed out by appellants’ motion for rehearing, the land development code provides that a development order [plat approval] “grants to the applicant ... the right to develop or utilize the premises in accordance with the terms and conditions contained in the development order.” *599 Pompano Beach, Fla., Code Ordinanoes § 157.07(A). Appellees assert that the plat approval cannot be a development order since, under the City’s land use code, approval of a site plan and the issuance of building permits are still needed before any of the items depicted on the plat can be completed. The notion of the inconse-quence of plat approvals in the development process was debunked in City of Coconut Creek v. Broward County Board of County Commissioners, 430 So.2d 959, 968 (Fla. 4th DCA 1983). There, in a case involving a dispute between the county and a municipality over the county’s right to veto the municipalities platting decisions, the court remarked:
[T]he county is vested with the substantive authority to retain veto power over the municipalities platting decisions to insure that development within the county is consistent with the overall scheme set out in the county’s land use plan. To hold otherwise would be to deny the county effective, coordinated control over development within the entire county including the municipalities located therein. Without some overall supervision[,] the municipalities would be free to make development decisions without consideration of their effect on adjacent communities.
Id. at 964 (emphasis added). The court further noted that the municipalities’ “narrow construction” of the purpose of platting requirements as providing little more than a map “was implicitly rejected in Kass v. Lewin, 104 So.2d 572, 579 (Fla.1958),” where the supreme court “acknowledged that the legislature intended the plat act ‘to promote community planning.’ ” 430 So.2d at 963.
In conclusion, section 163.3164 does not suggest that a development order is one which grants development rights only in the advanced stages of the development process or to a shovel-ready project. As appellants maintain, and we agree, the City’s approval of the revised plat grants PPI the right to develop the subject property in accordance with the increased uses or “restrictions” listed in the plat notes. Accordingly, we find that the City’s plat approval, with its attendant development consequences, constitutes a development order subject to challenge under section 163.3215(3). The final order of dismissal is therefore reversed and this cause remanded for further proceedings.

Reversed and remanded.

GROSS, J., concurs.
GERBER, J., dissents with an opinion.